Slip Op. 10-129

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                              :
SHANDONG CHENHE INTERNATIONAL :
TRADING CO., LTD.,            :
                              :
          Plaintiff,          :   Before: Richard K. Eaton, Judge
                              :
     v.                       :   Court No. 08-00373
                              :
UNITED STATES,                :   Public Version
                              :
          Defendant,          :
                              :
     and                      :
                              :
FRESH GARLIC PRODUCERS        :
ASSOCIATION, CHRISTOPHER      :
RANCH LLC, THE GARLIC COMPANY,:
VALLEY GARLIC, and VESSEY AND :
COMPANY, INC.,                :
                              :
          Def.-Ints.          :
_____:
```

OPINION

[Commerce's final determination rescinding plaintiff's new shipper review is sustained.]

Dated: November 22, 2010

*Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP* (*Bruce M. Mitchell*, *Ned H. Marshak*, *Elaine F. Wang*, and *Andrew T. Schultz*), for plaintiff.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Reginald T. Blades, Jr.*, Assistant Director, Civil Division, United States Department of Justice (*Richard P. Schroeder*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*Evangeline D. Keenan*), of counsel, for defendant.

*Kelley Drye & Warren, LLP* (*Michael J. Coursey* and *John M. Herrmann*), for defendant-intervenors.

Eaton, Judge: This matter is before the court on the motion

for judgment on the agency record of plaintiff Shandong Chenhe
International Trading Co., Ltd.  ("plaintiff" or "Chenhe").  *See*
Br. In Supp. of Pl.'s Rule 56.2 Mot. For J. Upon the Agency R.
("Pl.'s Br.").  Defendant the United States, and defendant-
intervenors the Fresh Garlic Producers Association, Christopher
Ranch LLC, The Garlic Company, Valley Garlic, and Vessey and
Company, Inc. (collectively, "defendant-intervenors") oppose the
motion.  *See* Def.'s Mem. In Opp'n to Pl.'s Rule 56.2 Mot. for J.
Upon the Agency R. ("Def.'s Mem."); Def-Ints.' Br. In Resp. To
Pl.'s Mot. For J. On the Agency R. ("Def.-Ints.' Br.").

By its motion, plaintiff challenges the final results of the
United States Department of Commerce's ("Commerce" or the
"Department") twelfth new shipper review of the antidumping duty
order on fresh garlic from the People's Republic of China ("PRC")
for the period of review ("POR") beginning on November 1, 2006
and ending on April 30, 2007.  *See* Fresh Garlic from the PRC, 73
Fed. Reg. 56,550 (Dep't of Commerce Sept. 29, 2008) (final
results and rescission, in part, of twelfth new shipper review)
and the accompanying Issues and Decision Memorandum(Dep't of
Commerce Sept. 19, 2008) ("Issues & Dec. Mem.") (collectively,
"Final Results").  Specifically, plaintiff insists that Commerce
erred in rejecting its lone U.S. sale as not being bona fide.
Jurisdiction lies pursuant to 28 U.S.C. § 1581(c) (2006) and 19
U.S.C. § 1516a(a)(2)(B)(iii).

For the reasons set forth below, the court denies
plaintiff's motion and sustains Commerce's Final Results.


BACKGROUND

On May 17, 2007, plaintiff asked Commerce to initiate a new
shipper review of its sale of fresh garlic.  Fresh Garlic from
the PRC, 72 Fed. Reg. 38,057, 38,057-58 (Dep't of Commerce July
12, 2007) (initiation of antidumping duty new shipper reviews)
("Initiation").  The purpose of a new shipper review is to
determine whether an exporter or producer, whose sales were not
examined in an investigation, is (1) entitled to its own
antidumping duty rate under the order resulting from the
investigation, and (2) if so, to calculate that rate.  To
calculate a rate, Commerce must determine the normal value,[1]
export price,[2] and the antidumping duty margin[3] for each entry of

---

[1]     Normal value is defined as:

> the price at which the foreign like product
> is first sold (or, in the absence of a sale,
> offered for sale) for consumption in the
> exporting country, in the usual commercial
> quantities and in the ordinary course of
> trade and, to the extent practicable, at the
> same level of trade as the export price or
> constructed export price . . . .

19 U.S.C. § 1677b(a)(1)(B)(i).

[2]     The "export price" is generally defined as "the price
at which the subject merchandise is first sold . . . by the
producer or exporter of the subject merchandise outside of the
United States to an unaffiliated purchaser in the United States

the subject merchandise.  19 U.S.C. § 1675(a)(2)(A).

Commerce initiated the review on July 12, 2007.  Initiation, 72 Fed. Reg. at 38,060.  On May 1, 2008, the Department published its preliminary results.  Fresh Garlic from the PRC, 73 Fed. Reg. 24,042, 24,042 (Dep't of Commerce May 1, 2008) (preliminary results of the 12th new shipper reviews) ("Preliminary Results"). In the Preliminary Results, Commerce found that Chenhe had imported the subject merchandise into the United States in a bona fide sale at a non-dumped price.  *Id*. at 24,047.  Commerce then preliminarily calculated a dumping margin of zero for the company.  *Id*.

After these results were published, defendant-intervenors filed a case brief alleging that Chenhe's purported sale was, in fact, not bona fide.  The brief claimed that Commerce had made errors in its analysis and asserted that if Commerce had taken specific evidence into consideration it would have not concluded, in the Preliminary Results, that plaintiff was entitled to a separate rate.  Conf. R. ("CR") Doc. No. 102 ("Def.-Int. Case

---

or to an unaffiliated purchaser for exportation to the United States . . . ."  19 U.S.C. § 1677a(a).

[3]   An antidumping duty margin is "the amount by which the normal price exceeds the export price or constructed export price of the subject merchandise."  19 U.S.C. § 1677(35)(A). If the price of an item in the home market (normal value) is higher than the price for the same item in the United States (export price), then the dumping margin comparison produces a positive number that indicates dumping has occurred.

Court No. 08-00373                                    Page 5

Brief").

In its Final Results, the Department took defendant-intervenors' arguments into account and determined that Chenhe's sale was not bona fide.  Commerce then rescinded the new shipper review as to the company.  Final Results, 73 Fed. Reg. at 56,551.

STANDARD OF REVIEW

The court must uphold a final determination by the Department in an antidumping proceeding unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ."  19 U.S.C. § 1516a(b)(1)(B)(i).

DISCUSSION

I.  Applicable Law

Under 19 U.S.C. § 1675(a)(2)(B), upon request, Commerce shall conduct administrative reviews "for new exporters and producers" and "establish . . . individual weighted average dumping margin[s]" for them.  19 U.S.C. § 1675(a)(2)(B)(i).  Thus, the statute provides new exporters or producers the opportunity to establish that they are entitled to an individual rate under an existing order.  It is Commerce's practice during these new shipper reviews to determine whether the new exporters and producers have conducted bona fide or commercially reasonable transactions.  *See* 19 C.F.R. § 351.214(b)(2) (2009); *Hebei New*

*Donghua Amino Acid, Co., Ltd. v. United States*, 29 CIT 603, 608, 374 F. Supp. 2d 1333, 1338 (2005) ("*Hebei*").  In conducting this test, Commerce's goal is to determine "whether the sale(s) under review are indicative of future commercial behavior." *Id*. at 613, 374 F. Supp. 2d at 1342.

This Court has, on a number of occasions, upheld Commerce's use of this analysis. *See, e.g.*, *Hebei*, 29 CIT at 608-09, 374 F. Supp. 2d at 1338; *Tianjin Tiancheng Pharmaceutical Co., Ltd., v. United States*, 29 CIT 256, 366 F. Supp. 2d 1246 (2005) ("*Tianjin*"); *Windmill International Pte., Ltd., v. United States*, 26 CIT 221, 193 F. Supp. 2d 1303 (2002) ("*Windmill*").  As laid out in *Hebei*, Commerce normally employs a totality of the circumstances test to determine whether the transaction is "commercially reasonable" or "atypical of normal business practices."  29 CIT at 610, 374 F. Supp. 2d at 1339 (quoting *Windmill*, 26 CIT at 231, 193 F. Supp. 2d at 1313).  Commerce looks at, among other factors, "the price and quantity" of the goods sold.  *Id*.

II.  Commerce's Determination

Chenhe's request for an individual dumping margin was based on its sole entry during the POR.  Initiation, 72 Fed. Reg. at 38,057.  In the Final Results, Commerce found that "[b]ased on the totality of the circumstances . . . , the Department has

determined that Chenhe's single POR sale is not a *bona fide* transaction, and subsequently has rescinded the new shipper review . . . ."  Issues & Dec. Mem. at Comm. 1.

In making this determination, Commerce stated that its practice, when applying its totality of the circumstances test, is "to examine both the quantity and value of other POR entries of subject merchandise from the PRC as well as a respondent's sales to third countries, when available, in evaluating the price and quantity of a single POR sale for the purposes of the *bona fides* analysis."  Issues & Dec. Mem. at Comm. 1.  The Department further explained that its determination that Chenhe's sale was not bona fide was "based on a combination of factors including: [the entry's] high price, its low quantity, and the fact that it was atypical of Chenhe's U.S. customer's normal commercial practices."  Issues & Dec. Mem. at Comm. 1.

With respect to quantity, Commerce found that Chenhe's sole sale of fresh garlic was: (1) smaller than the average sale amount for all Chinese exporters shipping to the United States during the POR; (2) markedly less than Chenhe's average sales to third countries during the POR; and (3) smaller than the average amount imported by Chenhe's U.S. customer during the POR.[4]

---

[4] Commerce found that the quantity of Chenhe's sale was [[        ]] kilograms, and out of the [[     ]] entries from China during the POR, it was the [[                    ]] entry. CR Doc. No. 109 ("BPI Memo") 2.  The average quantity of all
(continued...)

Issues & Dec. Mem. at Comm. 1 ("[T]he Department finds that the

quantity of Chenhe's sale . . . fell substantially below the

average U.S. import quantities [from China] . . . . [T]he

department notes that when the quantity of Chenhe's U.S. sales is

compared to the average quantity of its third-country sales, the

quantity is atypical. . . . Furthermore, . . . the quantity . .

. of Chenhe's sale [was] atypical of the other purchases of

subject garlic made by Chenhe's U.S. customer during the POR.").

As a result of these findings, Commerce concluded that the small

size of Chenhe's sale supported a finding that the entry was

unrepresentative of sales during the POR and thus not indicative

of future sales by the company.  Issues & Dec. Mem. at Comm. 1.

     With regard to sales price, the Department further found

that the relatively high sales price of Chenhe's entry was an

even greater indication that the sale was atypical of what

Chenhe's future behavior would be:

          [T]he Department compared the per-unit price
          for Chenhe's single POR sale with the

---

          [4](...continued)
entries during the POR was [[      ]] kilograms and Chenhe's
entry was [[            ]] than the average quantity for
all entries.  BPI Mem. 2  Commerce additionally found that
Chenhe's average shipment to third countries was [[      ]]
kilograms, which was [[            ]] than the quantities
of Chenhe's single U.S. sale.  BPI Mem. 2  Chenhe's U.S.
purchaser made [[   ]] other purchases during the POR, with an
average quantity of [[        ]] kilograms, thus the quantity
Chenhe's entry was [[                  ]] than the average
quantity of the U.S. purchaser's other transactions.  BPI Mem. 2

> [Average Unit Value ("AUV")] for all entries
> under HTSUS 0703.20.0010:[5] FRESH WHOLE GARLIC
> BULBS, and found that the price of Chenhe's
> single POR sale was unusually high when
> compared to the weighted AUV of all other
> entries under this HTSUS subcategory. . . .
> The Department further note[d] that Chenhe's
> POR sale subject to this review was also
> atypical when compared to the AUV of Chenhe's
> third country sales. . . .

Issues & Dec. Mem. at Comm. 1.

In other words, Commerce found that the price paid for

Chenhe's garlic was abnormally high[6] when compared to: (1) other

Chinese entries during the POR; and (2) the price of the

company's sales to third-country purchasers.  In addition, the

Department concluded that the price paid by Chenhe's U.S.

customer was markedly higher than the customer paid to other

Chinese exporters and producers during the POR.[7]

———————————————————

[5]     All parties agree that in the preliminary results,
Commerce incorrectly used HTSUS category  0703.20.0020: Fresh
Peeled Garlic to evaluate Chenhe's price and quantity data.
Issues & Dec. Mem. at Comm. 1.  In the Final Results, Chenhe's
data was analyzed using HTSUS category 0703.20.0010: Fresh Whole
Garlic Bulbs. *Id.*  In doing so, Commerce re-evaluated Chenhe's
submitted data using the correct HTSUS category and re-analyzed
Chenhe's third-country sales and additional data put on the
record.

[6]     The price for Chenhe's single entry was [[          ]].
The average unit value for all of the entries from China during
the POR was [[          ]].  Thus, Chenhe's price was [[
 ]] than the average unit value for all entries.  BPI Memo 2.
The average unit value of Chenhe's third country sales was [[
    ]].  BPI Mem. 2

[7]     The U.S. purchaser had [[    ]] purchases from [[    ]]
other exporters of the subject merchandise during the POR, the
                                                (continued...)

Based on these findings, Commerce determined that "[Chenhe's] sale does not provide a reasonable or reliable basis for calculating an antidumping duty margin." Issues & Dec. Mem. at Comm. 1. Therefore, since Chenhe had only one entry during the POR, and that entry was determined, based on quantity and price, to be non-bona fide, Commerce rescinded Chenhe's new shipper review and did not calculate a separate antidumping duty for the company. *Id.*

III. Analysis

The issue before the court is whether Commerce erred in its decision to rescind the new shipper review based on its finding that Chenhe's sale was not bona fide. For its part, Chenhe maintains that, as a matter of law, the Department can reject its sale only if it was "unrepresentative and extremely distortive," and that substantial evidence did not support such a finding. Pl.'s Br. 12 (quoting *Hebei*, 29 CIT at 610, 374 F. Supp. 2d at 1339). Commerce counters that both the low quantity of Chenhe's entry and its high price lead to a conclusion that the single sale under review was not indicative of future commercial behavior. Issues & Dec. Mem. at Comm. 1.

---

[7](...continued)
average unit value of these entries was [[            ]]. Chenhe's sale price was thus [[            ]] than the average unit value of other transactions made by the U.S purchaser. BPI Memo 2.

The bona fide analysis conducted in new shipper reviews has
been addressed by this Court on multiple occasions.  The case
that corresponds most closely to the facts before the court is
*Hebei*, which involved Commerce's determination that a single
entry of glycine into the United States was not a bona fide sale.
*Hebei*, 29 CIT at 604, 374 F. Supp. 2d at 1334.  The Court in
*Hebei* upheld, as reasonable, Commerce's use of the "totality of
circumstances" test to determine if a sale was bona fide, and
rejected the plaintiff's call for "bright line rules" regarding
what constituted an acceptable transaction.  *Id.* at 610, 374 F.
Supp. 2d at 1339.

In *Hebei*, the Department determined that the single entry at
issue could not provide the basis for making a new shipper
determination because "the pricing of the sale is artificially
high and otherwise commercially unreasonable, . . . the quantity
of the single shipment is extremely low in comparison with other
sales from the People's Republic of China" and "the importer has
not resold the merchandise and has otherwise not acted in a
commercially reasonable manner."  *Id.* at 606, 374 F. Supp. 2d at
1336.  In reaching its holding, the *Hebei* Court found that the
quantity of the questioned sale was "extremely low" when compared
with: (1) sales of other Chinese exporters to U.S. purchasers;
and (2) the exporter's own sales to other U.S. purchasers and to
purchasers in third countries.  *Id.* at 614-15, 374 F. Supp. 2d at

1342-43.

As to price, the Court found that Commerce had supported its conclusion that the price was abnormally high by a comparison of the sales price with: (1) the price of all similar (clearly not aberrational) entries made from China; and (2) the price of all similar entries from whatever source.  *Id*. at 611, 374 F. Supp. 2d at 1340 ("These price comparisons constitute substantial evidence for Commerce's decision that [Hebei's] sales price was 'substantially higher than any observed value.'").

Other cases have looked at similar factors when applying the totality of circumstances test.  The *Tianjin* case also involved a single shipment of glycine from the PRC to the United States. *Tianjin*, 29 CIT at 256, 366 F. Supp. 2d at 1247.  In that case, Commerce also rescinded the new shipper review, relying on its finding that "the price at which the goods were sold was not 'commercially reasonable.'"  *Id.* at 258, 366 F. Supp. 2d at 1248. Commerce found the sales price to be atypical of both the market as a whole and of plaintiff's own sales prices.[8]  *Id*. at 261, 366 F. Supp. 2d at 1251 ("Accordingly, Commerce found that Plaintiff's price was out of line with both the benchmark of other Chinese exporters' sales of glycine to the United States,

---

[8]     In addition to the atypical price, the single entry at issue in *Tianjin* was paid for nine months late, and there were irregularities in the Customs papers related to the entry, further supporting Commerce's finding that the sale was not bona fide.  *Tianjin*, 29 CIT at 270, 366 F. Supp. 2d at 1259.

and with Plaintiff's own pricing practice as it applied to third-country sales."). The *Tianjin* Court sustained Commerce's finding that in order to be bona fide, a transaction must be a "normal" sale in the context of good business practice generally and "a good future indicator of Plaintiff's future sales in the market." *Id.* at 276, 366 F. Supp. 2d at 1263.

*Windmill* involved a new shipper review for an exporter of cut-to-length carbon steel plate from Romania. *Windmill*, 26 CIT at 221, 193 F. Supp. 2d at 1304-05. In that case, Commerce looked at a number of factors in making its determination, including that the merchandise was shipped by air rather than by sea and that the purchaser re-sold the merchandise at a loss.[9] In addition, Commerce assigned great weight to its finding that "[t]he quantity of the sale was atypical of that which Windmill normally sells to the U.S. [purchaser]. . . ." *Id.* at 225, 193 F. Supp. 2d at 1307 (citations omitted).

The *Windmill* Court also found important Commerce's finding that "[s]ix months prior to and subsequent to the sale [at issue], Windmill made sales [of different merchandise] to the same U.S. purchaser that was substantially larger than the test case quantity." *Id*. at 229, 193 F. Supp. 2d at 1311 (citations

---

[9]    In the proceedings before Commerce in *Windmill,* the Department also concluded that "[t]here [was] no evidence that any commercial factors that normally influence price negotiations played any role in setting the price for this sale." *Windmill*, 26 CIT at 231, 193 F. Supp. 2d at 1313 (citations omitted).

omitted).  Thus, the Court upheld Commerce's conclusion that the

transaction "was not commercially reasonable and was atypical of

the normal business practices between Windmill and the United

States purchaser."  *Id*.

Commerce's determination that Chenhe's sale was not bona

fide is sustained.  In reaching this holding, the court is aware

that the size of an entry does not necessarily control Commerce's

analysis.  *See Windmill*, 26 CIT at 231, 193 F. Supp. 2d at 1313

("[S]ingle sales, even those involving small quantities, are not

inherently commercially unreasonable and do not necessarily

involve selling practices atypical of the parties' normal selling

practices.") (citations omitted).  Nonetheless, the size of the

sale can raise questions as to whether the purchaser would buy

the merchandise in the future in the same quantity at the same

price.  *See Tianjin*, 29 CIT at 260, 366 F. Supp. 2d at 1250

("[B]ecause the ultimate goal of the new shipper review is to

ensure that the U.S. price side of the antidumping calculation is

based on a realistic figure, any factor which indicates that the

sale under consideration is not likely to be typical of those

which the producer will make in the future is relevant.").

In addition, while plaintiff's reliance on a single sale

need not be fatal, a single sale leaves little to review.  *See*

*Tianjin*, 29 CIT at 275, 366 F. Supp. 2d at 1263 ("In one-sale

reviews, there is, as a result of the seller's choice to make

only one shipment, little data from which to infer what the shipper's future selling practices would look like.  This leaves the door wide to the possibility that the sale may not, in fact, be typical, and that any resulting antidumping duty calculation would be based on unreliable data.").

As to Chenhe's legal argument that its shipment must be found "extremely distortive" in order for it to be rejected, the company seeks to set the bar too high.  The purpose of a new shipper review is to determine if an exporter or producer is entitled to a separate rate and to *set that rate*.  In order for Commerce to set an accurate rate, it must have before it a transaction from which it can reasonably determine a margin.  Thus, a single transaction need not be "extremely distortive" in order to be found unsuitable.  Rather, to be used as a basis for setting an individual rate, a sale must be typical of normal business practices.  *See Windmill*, 26 CIT at 231, 193 F. Supp. 2d at 1313.

As to the evidence Commerce cites to justify its conclusion, Chenhe does not dispute that its entry contained one of the smallest quantities of goods of any entry from China during the POR.  Nor does it dispute that the size of the shipment was small when compared to Chenhe's sales to other countries and other purchases by the U.S. purchaser.  Thus, it was reasonable for Commerce to conclude the small quantity of Chenhe's sale would

not be indicative of typical future transactions.

As to the price paid for the shipment of merchandise,
Commerce found it to be "unusually high when compared to the
[average unit value] of all entries" during the POR.  Issues &
Dec. Mem. at Comm. 1.  Commerce also found the price to be
significantly higher than Chenhe's sales to third countries and
higher than its buyer's other purchases.  *Id.*  Plaintiff contends
that Commerce erred in its price analysis in comparing the price
of the entry with the AUVs of the other Chinese entries during
the POR.  Chenhe insists that Commerce should have instead
compared the price of the entry to other individual entries.
Pl.'s Br. 23 ("The bona fides of the Chenhe sale is based on the
Department's determination as to whether the price is
commercially reasonable—a determination which requires a
comparison of that price to other prices which fall within the
norm, regardless of their relationship to the average").

If Commerce had done so, plaintiff argues, it would have
found that the price of other entries that were not found to be
atypical had prices closer to Chenhe's price than to the AUV.
Pl.'s Br. 23.  Put another way, plaintiff urges the court to find
that Commerce should have compared the price of its single entry
to other entries during the POR with prices more in line with the
price of Chenhe's entry.  Thus, plaintiff observes that a number
of entries during the POR were relatively close to Chenhe's

price, although no entry had a price as high as Chenhe's.[10]
Pl.'s Reply Br. 10.

Chenhe's argument is unconvincing.  Commerce's use of AUV
data has been upheld by this Court in the past because "the
larger the sample, the less risk run that the sample chosen is
extreme or unusual simply by chance." *Tianjin*, 29 CIT at 267,
366 F. Supp. 2d at 1256.  In other words, using the average of a
large sample is a better indicator of normal activity than a
comparison of a smaller number of selected sales.  Here, Chenhe's
price was dramatically higher than the AUV for other Chinese
entries during the POR, as well as higher than the AUV for
Chenhe's sales to third countries during the POR and its buyer's
other purchases.  While the sale price may well have been close
to the high end of all Chinese sales during the POR, this
evidence does little to detract from the conclusion that Chenhe's
sale was atypical of normal business practices.

Finally, plaintiff argues that the price of its entry
included a premium to compensate Chenhe for agreeing to pay any
antidumping duties.[11]  As such, Chenhe maintains that the

---

[10]   Plaintiff cites to prices of [[
                        ]] to support this argument.  Pl.'s
Reply Br. 10.

[11]   Chenhe's transaction was the only transaction of all of
the transactions during the POR that was under [Delivered Duty
Paid ("DDP")] sales terms; all other transactions, including the
other transactions by the U.S. purchaser were made under [FOB]
                                          (continued...)

purchase price should be reduced to account for this premium.[12]
Pl.'s Br. 20.  Chenhe's U.S. customer, however, would not respond
to repeated questionnaires from Commerce and inquiries from
Chenhe's counsel concerning the terms of the sale.  As a result,
Commerce could not substantiate the company's claim of an
agreement relating to the antidumping duties.  Ultimately,
Commerce found that there was "no evidence on the record of this
review supporting Chenhe's claim that its U.S. customer agreed to
pay a higher premium in exchange for Chenhe's agreement to act as
the [importer of record] and be responsible for the [antidumping
duty] liability."  Issues & Dec. Mem. at Comm. 1 n.14.

        In disputing this conclusion, plaintiff insists that the
terms of the sale themselves "constitute the best evidence that
the buyer and seller understood the significance of the
[antidumping duty] liability when they negotiated the material
terms of this transaction" and that "[t]here was simply no reason
. . . for Chenhe . . . to submit any additional documentation to
support the self-evident fact that . . . the price will be
influenced by a decision as to which party assumes responsibility
for this liability."  Pl.'s Br. 20.  In other words, Chenhe

---

        [11](...continued)
sales terms.  BPI Memo 3.

        [12]    It should be noted that Chenhe's putative agreement to
reimburse the importer for any antidumping duties imposed on the
imported merchandise might run afoul of the "absorption"
provisions found in 19 C.F.R. § 351.402(f).

claims that the high price paid for the merchandise is
substantial evidence that it included an amount to compensate
plaintiff for assuming the burden of the duties.

The court finds that Commerce's decision not to credit
plaintiff's argument that the purchase price should be reduced to
compensate for antidumping duties is supported by substantial
evidence.  During the course of the review, Chenhe's U.S.
purchaser refused to respond to Commerce's questionnaires
regarding the negotiations leading up to the sale, and as to the
terms of sale themselves.  *See* CR Doc. Nos. 52, 63 (responses
from U.S. customer to Commerce and Counsel for Chenhe regarding
additional questionnaires).  Nor would the purchaser answer
questions posed by Chenhe's counsel.  CR Doc. Nos. 52, 63.  As a
result, Commerce had no information before it concerning: (1)
whether the sales price was increased to account for any
antidumping duties to be paid by the seller; or (2) the amount by
which the sales price was increased.  Thus, there is nothing on
the record to support plaintiff's terms of sale contention.

Further, the high price paid does not constitute evidence
that there was an agreement to compensate plaintiff for assuming
the antidumping duties, particularly because plaintiff has not
made any representation as to the amount that plaintiff was
supposed to be compensated.  At oral argument, counsel for
plaintiff was unable to offer the court any additional

explanation of plaintiff's claim, nor a methodology by which to calculate the size of the claimed premium.  Tr. of Conf. Or. Arg. at 47.  As such, the court finds reasonable Commerce's decision not to reduce the entry's price in order to take the claimed terms of sale into account.

Ultimately, the court must hold that substantial evidence supports Commerce's finding that Chenhe's sale was not bona fide because it was not "a good future indicator of Plaintiff's future sales in the market."  *Tianjin*, 29 CIT at 276, 366 F. Supp. 2d at 1263.  The purpose of a new shipper review is to determine an individual antidumping margin for an importer that did not receive a separate rate under an antidumping duty order.  In order to calculate an accurate antidumping duty margin for a new shipper, Commerce must examine sales data that is indicative of the respondent's normal business practices so as to judge its future commercial behavior.  *Hebei,* 29 CIT at 613, 374 F. Supp. 2d at 1342.  If the evidence of the entry on the record is not indicative of typical business practices, no accurate individual rate can be set.  Accordingly, in this case, the low quantity and high price for the single sale constitutes substantial evidence that the transaction could not be used as a basis for a separate rate.

**CONCLUSION**

Plaintiff's motion for judgment on the agency record is denied and Commerce's decision to rescind the new shipper review as to Chenhe is sustained.   Judgment shall be entered accordingly.


                                                     /s/ Richard K. Eaton
                                                    Richard K. Eaton

Dated:      November 22, 2010
            New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHANDONG CHENHE INTERNATIONAL TRADING CO., LTD.<br><br>          Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>          Defendant,<br><br>   and<br><br>FRESH GARLIC PRODUCERS ASSOCIATION, CHRISTOPHER RANCH LLC, THE GARLIC COMPANY, VALLEY GARLIC, and VESSEY AND COMPANY, INC.<br><br>          Def.-Ints. | Before: Richard K. Eaton, Judge<br><br>Court No. 08-00373 |

## JUDGMENT

Upon consideration of the papers and proceedings had herein, and in conformity with the court's decision in this matter, it is hereby

ORDERED that plaintiffs' motion for judgment on the agency record is denied. Accordingly, this case is dismissed.


/S/    Richard K. Eaton
_____
          Judge


Dated:    November 22, 2010
          New York, New York